Thomas Harvey BLANTON,
Plaintiff-Appellant,

v.

GRIEL MEMORIAL PSYCHIATRIC
HOSPITAL, et al.,
Defendants-Appellees.

No. 84–7745
Non-Argument Calendar.

United States Court of Appeals,
Eleventh Circuit.

April 29, 1985.

Michael Miskowiec, Legal Services Corp of Alabama, Andalusia, Ala., for plaintiff-appellant.

G.R. Trawick, Asst. Atty. Gen., Dept. of Mental Health/Mental Retardation, Montgomery, Ala., for defendants-appellees.

Before GODBOLD, Chief Judge, KRAVITCH and HATCHETT, Circuit Judges.

GODBOLD, Chief Judge:

 AFFIRMED on the opinion of the district court, attached as an appendix.

## APPENDIX

### MEMORANDUM OPINION

This cause is now before the Court on defendants' motion to dismiss, or in the alternative, motion for summary judgment, filed herein on September 11, 1984. Since reference was made to matters outside the pleadings, the Court will treat said motion as a motion for summary judgment. Upon consideration of the motion, briefs, affidavits, and oral arguments of counsel, the Court is of the opinion that defendants' motion for summary judgment is due to be granted.

### I. *Factual Background*

Construing the facts in favor of plaintiff, the Court concludes that there remains no genuine issue as to the following material facts:

Plaintiff was appointed to the position of Activity Program Aide I at Greil Memorial Psychiatric Hospital, a state hospital located in Montgomery, Alabama. This is a classified employee position under the provisions of the Alabama Merit System Act and rules adopted by the Personnel Board pursuant to the Act. §§ 36–26–1 *et seq.*, *Code of Alabama* (1975). Plaintiff, as a new employee in the classified service, had to work in this job for six months before he could take advantage of the protections afforded all permanent employees.

On June 25, 1984, Charles Watson, Sr., the personnel officer of the hospital and one of the defendants in this case, notified

plaintiff that there would be a conference held in three days to determine if plaintiff should be discharged from his position as an activity program aide. Watson informed the plaintiff that the hospital had received information which indicated that plaintiff had falsified his employment application when he stated that he had never been convicted of any criminal offense other than a minor traffic violation. At this time, plaintiff had not yet completed his six month working test period.

Defendant Don Schofield, director of the hospital, and two other hospital employees attended the June 28 conference on behalf of the hospital. They did not advise plaintiff of the information the hospital had received which led them to conclude that plaintiff had falsified his application. They did, however, give plaintiff an opportunity to "speak to" the charge that he had falsified his application.

Four days after the June 28 conference, defendant Schofield notified plaintiff by letter that he was terminating plaintiff's employment with the hospital. The letter stated that the hospital had received information indicating that plaintiff had committed prior offenses other than minor traffic violations. The letter also concluded that plaintiff had failed to rebut this charge at the pretermination conference.

Following his termination, plaintiff filed a complaint in this Court alleging that defendants had deprived him of property and liberty interests that he had in his employment under the Fourteenth Amendment to the United States Constitution. Plaintiff also included a pendent state claim for wrongful discharge under Section 36–26–1, et seq., Code of Alabama (1975). As compensation for these alleged violations, plaintiff asked for reinstatement to his former position, and an award of back pay, along with general and punitive damages.

## II. Conclusions of Law

Plaintiff's action arises under the Fourteenth Amendment to the United States Constitution and Title 42 U.S.C. § 1983. Jurisdiction is conferred on this Court by Title 28 U.S.C. § 1343(3).

In considering plaintiff's claims, the Court will address the question whether plaintiff's termination and the manner in which this was done deprived plaintiff of a property interest or a liberty interest without due process of law in violation of the Fourteenth Amendment. This discussion will also encompass plaintiff's claims under 42 U.S.C. § 1983. Claims under this Section must allege that some person, acting under color of state law, deprived plaintiff of "rights, privileges, or immunities secured by the Constitution and laws" of the United States. 42 U.S.C. § 1983. The rights relied upon by plaintiff in his complaint are those guaranteed by the Fourteenth Amendment so that his claim under § 1983 and the Fourteenth Amendment raise the same issues.

### A. Deprivation of Fourteenth Amendment Property Interest

Plaintiff alleges that although he was a probationary employee, he had a constitutionally protected property interest in his employment at the hospital. He claims that defendants deprived him of this interest without due process of law by a) not advising him of the charges against him so that he could rebut them at the pretermination conference; b) not advising plaintiff of his right to employ counsel, call witnesses or cross-examine witnesses at the conference; and c) not allowing plaintiff to confront his accusers because defendant Watson failed to attend the conference.

In order for plaintiff to have been entitled to the safeguards of procedural due process, he must have had a property interest in his employment, that is, a "legitimate claim of entitlement" to his continued state employment. Board of Regents v. Roth, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). It is well settled that a permanent employee in the classified service, whose employment may be terminated only for cause, has a property interest in his continued employment, and is entitled to due process protections. Thompson v. Bass, 616 F.2d 1259, 1265 (5th Cir.) cert. denied, 449 U.S. 983, 101

S.Ct. 399, 66 L.Ed.2d 245 (1980). At a minimum, these procedural protections must include "written notice of the reasons for termination and an effective opportunity to rebut those reasons." *Glenn v. Newman,* 614 F.2d 467, 472 (5th Cir.1980). On the other hand, a state employee who may be discharged at will under state law does not have a property interest in his continued employment, and is not entitled to the protections of due process. *Thompson v. Bass,* 616 F.2d at 1265.

■ To determine if plaintiff was entitled to these protections, the Court begins by referring to the state law which contains the terms and conditions of plaintiff's employment. State law defines what is and what is not property. If property interests are created, the Constitution protects these rights by guarantees of due process. *Arnett v. Kennedy,* 416 U.S. 134, 185, 94 S.Ct. 1633, 1659, 40 L.Ed.2d 15 (1974) (White, J., concurring in part and dissenting in part), *quoted* at 616 F.2d 1265.

The relevant state law includes Section 36–26–10(a), *Code of Alabama* (1975), which specifies that positions in the state service shall be divided into the "exempt, the unclassified and the classified services." Another statute regulates the dismissal of a classified employee, and has been interpreted as authorizing an employee's dismissal only for cause. Section 36–26–27, *Code of Alabama* (1975); *Simpson v. Van Ryzin,* 289 Ala. 22, 30–31, 265 So.2d 569, 575–76 (1972). This provision gives a classified employee a property right in his continued employment, accompanied by the procedural due process protections of the Fourteenth Amendment. *Thompson v. Bass,* 616 F.2d 1259, 1265 (5th Cir.), *cert. denied,* 449 U.S. 983, 101 S.Ct. 399, 66 L.Ed.2d 245 (1980). This protected status applies only to a permanent employee who has "satisfactorily completed a working-test period of at least six months, and whose permanent appointment has been recommended by the appointing authority." Rule 670–X–3–.01(b)(1), *Administrative Code of the Personnel Department,* enacted pursuant to Section 36–26–6(b)(1), *Code of Alabama* (1975).

The provision governing the removal of a classified employee during this six month probationary period differs in several material respects from the one governing permanent employees. The appointing authority may discharge a probationary employee, if, in his opinion, the employee's six month working test period indicates that the employee "is unable or unwilling to perform his duties satisfactorily or that his habits and dependability do not merit his continuance in the service." Section 36–26–21(b), *Code of Alabama* (1975). The director of personnel may discharge the employee if he finds, after giving the employee notice and an opportunity to be heard, that the employee was appointed as a result of fraud or error. *Id.*

Plaintiff maintains that because this statute provides specific reasons for which a probationary employee may be discharged, the statute provides for dismissal for cause only, and creates a property interest in the employee. Plaintiff relies on the case of *Glenn v. Newman,* 614 F.2d 467, 471 (5th Cir.1980), in which the court concluded that specified reasons listed in the regulations governing an employee's discharge "are meant to be analogous to allowing termination only for 'cause.'" However, the court in *Glenn* was "[r]eading the regulations in their entirety to glean the expectations of the parties involved ..." *Id.* at 471; *United Steelworkers v. University of Alabama,* 599 F.2d 56, 60 (5th Cir.1979). The other regulations considered by the court in *Glenn* provided that suspension could occur only "for cause." 614 F.2d at 472.

■ In the present case, reading the Alabama regulations "in their entirety" leads to the opposite conclusion. The section governing probationary employees was clearly designed to offer a lesser expectation of continued employment than that offered to permanent employees. This is inherent in the idea of a "working test period." Section 36–26–21, *Code of Alabama* (1975). The discretion given the appointing authority under this section indi-

cates that although he could discharge a probationary employee only for the stated reasons, the appointing authority is the person who determines if these reasons exist. This provision, giving directions for the appointing authority to use in exercising his judgment, amounts to providing for a discharge "at the will" of the appointing authority. *Edwards v. Brown,* 699 F.2d 1073, 1077 (11th Cir.1983).

Because the plaintiff could be discharged "at the will" of his employer during his probationary period, he had no valid expectation of continued employment during this probationary period. *United Steelworkers v. University of Alabama,* 599 F.2d 56 (5th Cir.1979). For that reason, plaintiff did not possess a property right in his employment, and was not entitled to the procedural safeguards designed to protect such rights.[1]

### B. *Deprivation of Fourteenth Amendment Liberty Interest*

Plaintiff alleges that he had a constitutionally protected liberty interest in his employment, and that defendants deprived him of this interest without due process of law. In order to establish a claim that his freedom to take advantage of other employment opportunities was impaired, plaintiff must show that his freedom to work was stigmatized in or as a result of the discharge process, that the charges were made public, and that plaintiff was denied a meaningful hearing to clear his name. *Wells v. Doland,* 711 F.2d 670, 676 (5th Cir.1983). The court in *Wells* noted that as part of plaintiff's claim that he was stigmatized by these charges, plaintiff must show that the charges were false. *Id.,* at 676, n. 7, citing *Codd v. Velger,* 429 U.S. 624, 97 S.Ct. 882, 51 L.Ed.2d 92 (1977).

Nowhere does plaintiff claim that the charges against him were false. Instead, at paragraph twenty of his complaint, he states that he "did not *knowingly* falsify his application for employment." (emphasis added). For this reason, the al-

legations in plaintiff's complaint are insufficient to establish an important element of his claim. The Court would add, however, as noted above, that defendants did furnish plaintiff an opportunity to clear his name by furnishing him notice and an opportunity to be heard at the pretermination conference.

### C. *Pendent State Claim of Wrongful Discharge*

Finally, the Court believes that plaintiff's pendent state claim of wrongful discharge must also be rejected. The basis of this claim is that only the State Director of Personnel is authorized to terminate a state employee's employment when the appointment is made as a result of fraud or error. Section 36–26–21(b) *Code of Alabama* (1975). In plaintiff's case, defendant Schofield, who was director of the hospital, terminated plaintiff's employment.

Defendants, however, have submitted an affidavit to this Court from Ken Wallis, who is the Receiver and Acting Commissioner of the Alabama Department of Mental Health/Mental Retardation. In this affidavit, Mr. Wallis states that he had delegated to Mr. Schofield, pursuant to Section 22–50–16, *Code of Alabama* (1975), the authority to appoint and remove all hospital employees. After considering this affidavit, the Court concludes that there is no factual basis for plaintiff's pendent claim.

A separate judgment will be entered in accordance with this memorandum opinion.

DONE this 25th day of October, 1984.

/S/ Truman Hobbs
UNITED STATES
DISTRICT JUDGE

---

1. Although not required to do so by the Constitution, defendants did comply with the procedural requirements of Section 36–26–21(b), *Code of Alabama* (1975), when they furnished plaintiff with notice of the charges and gave him an opportunity to be heard at the pretermination conference.